**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| HTA-SCW Webb Medical A LLC, *et al.*, | No. CV-17-01237-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Roskamp Management Company, *et al.*, | |
| Defendants. | |

At issue is Defendants Roskamp Management Company, LLC ("RMC"), Daniel Sevick, Frazer/Exton Development LP ("Frazer/Exton"), and Whiteland Village Limited's ("Whiteland Village") Consolidated Motion to Dismiss for Lack of Personal Jurisdiction, for Abstention/Stay Under *Colorado River*, Comity, and the First-to-File Rule, for Transfer of Venue Pursuant to 28 U.S.C. § 1404(a), and to Dismiss for Failure to State a RICO Claim (Doc. 47, MTD), which Defendants Whiteland Holdings LP ("Whiteland Holdings"), Robert Roskamp, Philip Kaltenbacher, PDK Family Trust UAD 10-24-2006 ("PDK Family Trust"), Paul Woodruff, and Woodruff CCRC Partnership, L.P. ("Woodruff CCRC") join (Docs. 48, 49, 51, 52). The seventeen HTA LLC Plaintiffs (collectively, "HTA") filed a Response in Opposition (Doc. 55, Resp.) to which RMC, Sevick, and Whiteland Village filed a Reply (Doc. 65, Reply), and which Whiteland Holdings, Roskamp, Kaltenbacher, PDK Family Trust, Woodruff, and Woodruff CCRC join (Docs. 66, 67, 68, 69). The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f). The Court grants Defendants' Motion to

Transfer to the Eastern District of Pennsylvania. The Court, however, denies the remainder of Defendants' Motion as moot.

**I.  BACKGROUND**

RMC is a Delaware limited liability corporation owned by Roskamp, PDK Family Trust, and Woodruff CCRC, and managed by Sevick, who serves as the President of the company. (Sevick Decl. ¶¶ 11, 27.) In 2009, two RMC subsidiaries, KRW MOB A and KRW MOB B (collectively, "KRW") contracted to sell 17 medical office buildings in Sun City, Arizona to HTA for $107 million. In conjunction with the sale, KRW agreed to a four year, $7 million obligation to lease back the property as the master tenant. (Compl. ¶ 21.) As a condition of the entire transaction, RMC executed a Master Lease Guaranty in which it agreed to maintain a net worth of $20 million during the four year lease period. (Compl. ¶ 22.) KRW, however, ceased making its monthly lease payments to HTA in November 2011 and RMC failed to make payments under the Master Lease Guaranty. (Compl. ¶ 23.) After RMC and KRW's failure to pay under the agreements, HTA sent notices of default to each for the breach of the agreements. (Compl. ¶ 23.)

On January 18, 2013, HTA filed suit in Maricopa County Superior Court against RMC for breach of the Master Lease Guaranty (the "Guaranty Action"). (Compl. ¶ 24.) Simultaneously, HTA filed an arbitration demand against KRW as required by the Master Lease. (Compl. ¶ 24.) In September 2014, an arbitrator issued an interim award in favor of HTA before granting a final award to HTA for $4,621,195.35 in January 2015. (Compl. ¶ 25.) The final judgment against KRW was later confirmed by the Maricopa County Superior Court and KRW did not appeal. (Compl. ¶ 25.) After recovering $1,050,614.41 from an escrow account held by KRW, HTA pursued the remainder of the arbitration award against RMC in the Guaranty Action. (Compl. ¶ 26.) On September 9, 2016, the Superior Court issued a final judgment against RMC for $4,126,173.34. (Compl. ¶ 26.) The Arizona Court of Appeals confirmed the judgment against RMC. (Doc. 73, Notice of Suppl. Authority.) To date, RMC has not made any payment to HTA on this judgment. (Compl. ¶ 28.)

In addition to KRW, RMC is also associated with two Pennsylvania limited partnerships—Frazer/Exton and Whiteland Village—to which RMC issued loans totaling close to $24 million that RMC has not collected on. (Compl. ¶ 34.) In 2007, Frazer/Exton and Whiteland Village entered into a $23 million loan agreement with Santander Bank ("Santander") with RMC, KRW Pennsylvania LP, Roskamp, Woodruff, and Kaltenbacher acting as guarantors. (Compl ¶¶ 40–41; Woodruff CCRC Decl. ¶¶ 22, 23.) As collateral for the loan, Santander received mortgages on two parcels of land (the "Whiteland Properties") totaling 130 acres in Chester County, Pennsylvania. (Compl. ¶ 15–16; Woodruff CCRC Decl. ¶ 22.) The parties later increased the loan amount by $6 million and extended the loan maturity date to April 15, 2009. (Compl. ¶ 41.) However, after a dispute between Santander and the two partnerships, Santander initiated foreclosure proceedings and filed claims against the loan guarantors in Pennsylvania state court. (Compl. ¶ 44.) The guarantors, Frazer/Exton, and Whiteland Village subsequently filed counterclaims against Santander in the state court action for fraudulent and negligent misrepresentation, breach of fiduciary duty, and breach of contract. (Compl. ¶ 44.) In December 2014, the parties entered into a settlement agreement (the "Whiteland Settlement") which resulted in Santander selling its mortgage on the Whiteland Properties to another entity affiliated with Defendants, Whiteland Holdings LP. (Compl. ¶¶ 45–47.) Around this time, RMC, Frazer/Exton, and Whiteland Village also settled claims held against HSH Nordbank AG ("Nordbank") related to construction financing on the Whiteland Properties from which RMC derived little value. (Compl. ¶¶ 55–57, 81.)

After acquiring the mortgage, Whiteland Holdings foreclosed on the property, resulting in a sheriff's sale in November 2016. (Compl. ¶ 51.) Prior to the sale, RMC had the property appraised and learned that the fair market value exceeded $20 million. However, Whiteland Holdings purchased the property for $1 during the eventual sale with RMC failing to place any bid. (Compl. ¶ 53.) Following the sale of the property,

Frazer/Exton and Whiteland Village lacked any assets to repay loans made by RMC to the partnerships. (Compl. ¶ 54.)

Plaintiffs filed suit in this Court raising a variety of claims against Defendants, including: (1) four claims of fraudulent transfer; (2) conspiracy to defraud judgment creditors; (3) fraudulent inducement; (4) aiding and abetting fraudulent inducement; (5) piercing the corporate veil; (6) civil RICO; (7) constructive trust; and (8) two claims of unjust enrichment.

Defendants now move to dismiss the Complaint, arguing that Plaintiffs fail to establish that this Court has personal jurisdiction over any Defendant other than RMC. (MTD at 3–11.) Additionally, Defendants move for a dismissal of Plaintiffs' civil RICO claims under Rule 12(b)(6). (MTD at 24–28.)

In the alternative, Defendants move for a stay of the matter under the *Colorado River* doctrine,[1] or a stay or abstention because of a similar matter currently being litigated in the Eastern District of Pennsylvania. (MTD at 11–17.) Finally, Defendants move to transfer this matter to the Eastern District of Pennsylvania. (MTD at 18–24.)

## II.   MOTION TO TRANSFER

Because a parallel action with partial, if not substantial, overlap has been filed and is ongoing, *see Branch Banking & Trust Co. v. Roskamp Mgmt. Co.*, No. 17-cv-01214-NIQA (E.D. Pa. filed March 3, 2017) (the "Interpleader Action"), and because substantial questions exist surrounding the propriety of this Court exerting personal jurisdiction over a number of the Defendants, the Court first considers Defendants' Motion to Transfer. Defendants seek to transfer this action to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). (MTD at 18.) Plaintiffs do not contest that this action could have been brought in the Eastern District of Pennsylvania, and Defendants do not object to personal jurisdiction in Pennsylvania, as they do here. (*See* MTD at 3–11.) Accordingly,

---

[1] Defendants concede that this basis for the Motion is now moot due to the conclusion of Defendants' appeal in the Arizona state court action. (Doc. 75, Notice of Suppl. Authority.)

the Court limits its analysis to whether the convenience of the parties and witnesses and interests of justice justify a change of venue.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In making this determination, a court must balance numerous factors, including: (1) the state that is most familiar with the governing law, (2) the plaintiff's choice of forum, (3) the respective parties' contacts with the forum, (4) the contacts relating to the plaintiff's cause of action in the chosen forum, (5) the differences in the costs of litigation in the two forums, (6) the availability of compulsory process to compel attendance of unwilling, non-party witnesses, and (7) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

When weighing these factors, a court must be cognizant of the "strong presumption in favor of plaintiff's choice of forums" and should not grant transfers freely. *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003) (citation omitted), *vacated on other grounds*, 542 U.S. 952 (2004); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[G]reat weight is generally accorded plaintiff's choice of forum."); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). Transfer is not appropriate if the result is merely to shift the inconvenience from one party to another. *Gherebi*, 352 F.3d at 1303 ("Section 1404(a) provides for transfer to a more convenient forum, 'not to a forum likely to prove equally convenient or inconvenient.'" (quoting *Van Dusen*, 376 U.S. at 645-46)). Thus, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

### A. Location of Agreement Negotiation

Turning to the first factor, Plaintiffs argue that the location of the negotiations between HTA and KRW weighs against transfer because the agreements at the heart of this matter were negotiated in Arizona for the sale of property in the state. (Resp. at 25.) Defendants, however, argue that the relative importance of that location is diminished in this case because that contract has been reduced to a judgment that Plaintiffs are now attempting to collect on. (MTD at 21.)

Defendants' argument is well-struck. Although the agreement between HTA and KRW was negotiated in Arizona, the obligations created by that agreement have been reduced to an enforceable judgment by the courts in Arizona. (Compl. ¶¶ 25–28.) The crux of Plaintiffs' Complaint, however, concerns acts and transactions in Pennsylvania by Defendants. (*See* Compl. ¶¶ 39–58.) Nevertheless, Defendants' analysis of the factor plainly ignores Plaintiffs' allegations of fraudulent inducement and aiding and abetting fraudulent inducement, which pertain directly to the negotiation of the contracts at the heart of the Sun City Transaction in Arizona. (Compl. ¶ 96–112.) Because of this, the Court weighs this factor neither in favor of, nor against, transfer of the matter.

### B. State Most Familiar with Governing Law

This case involves Arizona state law claims and a federal claim under 18 U.S.C. §§ 1961 *et seq.* This weighs against transferring the case because the District of Arizona is more likely to be familiar with the governing law relating to the state law claims.

### C. Plaintiff's Choice of Forum

When a plaintiff brings suit in his or her home forum, plaintiff's choice is generally accorded great weight. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Plaintiffs are Delaware LLCs with their headquarters and principle place of business in Scottsdale, Arizona. (Compl ¶ 6; Edwards Decl. ¶ 3.) As such, Plaintiffs have a legitimate connection to this forum. *See Leyvas v. Bezy,* No. CV07-1032-PHX-SMM, 2008 WL 2026276, at *5 (D. Ariz. May 9, 2008). Although Defendants suggest that Plaintiffs have engaged in forum shopping because Plaintiffs have asserted counterclaims in the

Pennsylvania Interpleader Action, (MTD at 21), the Court recognizes Plaintiffs' position that those claims were asserted to preserve Plaintiffs' rights rather than in an attempt at forum shopping. (Resp. at 24.) Thus, this factor weighs in favor of keeping the case in the District of Arizona.

### D. Respective Parties' Contacts with the District of Arizona

Of the two potential forums for the lawsuit, Plaintiffs have contact solely with Arizona, and maintain no connection to Pennsylvania. (Resp. at 24; Edwards Decl. ¶ 3.) Conversely, other than RMC, Defendants' connection to Arizona is tenuous at best.[2]

However, the relative convenience to witnesses is often considered "the most important factor in resolving a motion to transfer" under § 1404(a). *Airbus DS Optronics GmbH v. Nivisys LLC*, No. CV-14-02399-PHX-JAT, 2015 WL 3439143, at *4 (D. Ariz. May 28, 2015) (internal quotations omitted). In considering whether the convenience of the particular venue to witnesses weighs in favor of transfer, the court must consider the number of witnesses each party has, their location, and the importance of the witnesses. *Leyvas*, 2008 WL 2026276, at *3.

Because the fraudulent transactions in the Complaint occurred in Pennsylvania, Defendants argue that the majority of the witnesses to the proceeding will come from Pennsylvania. In litigating the action, Defendants anticipate the use of expert witnesses to testify as to Pennsylvania creditors' and debtors' rights, bankruptcy, mortgage foreclosure, and sheriff's sales, all of whom would similarly be located in Pennsylvania. (MTD at 22–23.) Although Plaintiffs argue that their witnesses and evidence are located entirely in Arizona (Resp. at 24; Edwards Decl. ¶ 3), they do not provide the Court with any indication as to the number of witnesses or their importance to proving the allegations in the Complaint. *See Leyvas*, 2008 WL 2026276, at *3.

---

[2] Indeed, each Defendant contests this Court's ability to exercise personal jurisdiction. (MTD at 3–11.) Although the Court need not reach the question for the purpose of the Motion to Transfer, it appears that at least one of the Defendants—if not more—is not subject to personal jurisdiction in Arizona.

- 7 -

Moreover, Plaintiffs are currently litigating counter-claims in a concurrent action in the Eastern District of Pennsylvania. *See Branch Banking & Trust Co. v. Roskamp Mgmt. Co.*, No. 17-cv-01214-NIQA (E.D. Pa. filed March 3, 2017). Because of this, both Plaintiffs and any of Plaintiffs' overlapping witnesses will already be required to travel to Pennsylvania to serve as a witness in that matter. Accordingly, the Court finds that this factor strongly favors transfer of the matter.

### E. Contacts Relating to Plaintiffs' Cause of Action in Arizona

As discussed under the first factor, although Plaintiffs' causes of action stem from an alleged scheme by Defendants to deprive Plaintiffs of the ability to collect upon a judgment issued by the courts in Arizona, Plaintiffs' claims concern fraudulent activity alleged to have occurred in in Pennsylvania, rather than Arizona. Accordingly, the Court finds that this factor weighs in favor of transfer.

### F. Cost of Litigation

When the moving party seeks to transfer a matter to a district in which the parties are litigating a similar case with "some degree of overlap in terms of evidence and witnesses," the cost of litigation weighs in favor of transfer. *See Realty Executives Int'l Servs. LLC v. Brokers Holdings LLC*, No. CV-17-00213-PHX-JJT, 2017 WL 1407676, at *3 (D. Ariz. Apr. 20, 2017). That is the case here, as the parties are currently in the midst of litigating the Interpleader Action in the Eastern District of Pennsylvania, which is proceeding apace. *See Branch Banking & Trust Co. v. Roskamp Mgmt. Co.*, No. 17-cv-01214-NIQA (E.D. Pa. filed March 3, 2017). As Defendants argue, and Plaintiffs fail to rebut, the legal issues in the Interpleader Action substantially overlap with the issues at play in this matter. Indeed, the pleadings in the Interpleader Action indicate that HTA has pursued cross-claims against Whiteland Holdings and the RMC Defendants which are premised on HTA's allegation of fraudulent transactions by Defendants in Pennsylvania. *See Branch Banking & Trust Co. v. Roskamp Mgmt. Co.*, No. 17-cv-01214-NIQA, ECF 18 (E.D. Pa. May 5, 2017). As such, it appears that the two matters overlap substantially.

Thus, the cost to the parties, and to the Court, of duplicating the proceedings in two District Courts weighs in favor of transfer.

### G. Availability of Compulsory Process / Access to Sources of Proof

Finally, because Plaintiffs' allegations against Defendants concern the release claims by RMC, Frazer Exton and Whiteland Village against Santander Bank in Pennsylvania, a settlement agreement negotiated between RMC, Frazer Exton, Whiteland Village, and Nordbank in Pennsylvania, and a sheriff's auction in Pennsylvania (Compl. ¶¶ 59–83), it appears that any non-party witness necessary to testify in this matter would be located in Pennsylvania and thus not subject to compulsory process in this Court. Similarly, the sources of proof for these allegations are likely to be located only in Pennsylvania. As such, both factors weigh in favor of transfer to the Eastern District of Pennsylvania.

## III. CONCLUSION

Although the Court affords substantial weight both to Plaintiffs' decision to litigate in Arizona and the Court's familiarity with Arizona law, the remaining factors are either neutral or weigh in favor of transferring the matter to the Eastern District of Pennsylvania. The Court's principle consideration in transferring this matter, however, is the avoidance of any expense and cost to the parties of duplicating litigation in this matter and the Pennsylvania Interpleader Action. Additionally, the Court affords substantial weight to the fact that most of the witnesses in this matter are located in Pennsylvania. As such, the Court will grant Defendants' Motion to Transfer. Because the Court grants this aspect of the Motion, it does not reach the remaining bases for Defendants' Motion, which may be re-raised before the transferee court as applicable. Thus, the Court denies the balance of Defendants' Motion.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Consolidated Motion to Dismiss for Lack of Personal Jurisdiction, for Abstention/Stay Under *Colorado River*, Comity, and the First-to-File Rule, for Transfer of Venue Pursuant to 28 U.S.C. § 1404(a), and to Dismiss for Failure to State a RICO

Claim (Doc. 47). The Court grants the Motion to Transfer. The remaining bases for Defendants' Motion are denied as moot. The Clerk of Court shall take all necessary steps to ensure the prompt transfer of this action to the United States District Court for the Eastern District of Pennsylvania.

**IT IS FURTHER ORDERED** that the Clerk of Court shall close this case after ensuring prompt transfer.

Dated this 14th day of March, 2018.

Honorable John J. Tuchi
United States District Judge